IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

FRANK STEPHENSON,

    Petitioner,                       No. CIV S-08-1730 MCE DAD P

    vs.

M. MARTELL,

    Respondent.                   <u>FINDINGS & RECOMMENDATIONS</u>

         Petitioner is a former state prisoner proceeding pro se with a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner challenges the 2007 decision of the California Board of Parole Hearings (hereinafter "Board") to deny him parole for one year at his fifteenth parole consideration hearing held on February 22, 2007. Upon careful consideration of the record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

PROCEDURAL BACKGROUND

         On October 14, 1976, an Alameda County Superior Court jury convicted petitioner of first degree murder with use of a firearm. (Pet. at 2; Answer, Ex. A to Ex. A.) Petitioner was sentenced to seven years to life in state prison. (Pet. at 2.)

/////

The parole consideration hearing which is placed at issue by the instant petition was held on February 22, 2007. (Answer, Ex. A at Ex. D (hereinafter "Decision")). On that date, a Board panel found petitioner not suitable for release and denied parole for one year. (Id. at 52.)[1] Petitioner challenged the Board's decision in a petition for writ of habeas corpus filed in the Alameda County Superior Court. (Answer, Ex. A.) The Superior Court rejected petitioner's claims in a reasoned decision on the merits. (Answer, Ex. B.)

Subsequently, petitioner filed a petition for writ of habeas corpus in the California Court of Appeal for the First Appellate District. (Answer, Ex. C.) That petition was summarily denied by order dated April 1, 2008. (Answer, Ex. D.) On October 17, 2007, petitioner filed a petition for review in the California Supreme Court. (Answer, Ex. E.) That petition was summarily denied by order dated June 11, 2008. (Answer, Ex. F.)

On July 28, 2008, petitioner commenced this action by filing a federal petition for writ of habeas corpus. On January 29, 2009, petitioner was released on parole. On January 30, 2009, respondent filed a motion to dismiss the instant petition, arguing that petitioner's release from prison rendered this action moot. That motion to dismiss was denied by order dated September 25, 2009.

## FACTUAL BACKGROUND

The Board described the facts of petitioner's commitment offense at the February 22, 2007 parole suitability hearing as follows:

> On February 19, 1975, a witness who lived in (inaudible) Street in (inaudible) heard five or six shots ring out not far from the house. That same morning, an officer arrived at the end of a dead end street, about a hundred yards away from her home and found the body of a young woman. The body was subsequently identified as Diane Deavers, age 24 years old. She was shot six times with a .38 caliber revolver. Police canvassed the area, couldn't locate a witness to the murder. Found near the body was a tan hat. A

---

[1] In 2005, prior to the parole consideration hearing at issue here, petitioner was found suitable for parole by a Board panel, but the Board's decision was reversed by the governor. (Decision at 41, 46.)

> feather stuck out of the hat.  The next day, a man named Leslie (inaudible) contacted the Alameda police.  He reported to the police that he had reason to believe that his gun had been used to kill the victim.  He had a .38 caliber revolver, unloaded, in his possession at a party at the home of Frank Stephenson, and is known as Williams, Diane Stephenson, the mother, who is the inmate and (inaudible) Williams, who is the Diane Stephenson's mother, it says [sic].  The party took place on the evening in the early morning hours.  Other people were at the party, including the victim.  The victim had from time to time had been romantically involved with the inmate, apparently.  During the time of the party, Leslie (inaudible) got drunk.  He showed the gun to Joanne Stephenson.  She had a couple of bullets (inaudible).  Apparently, the inmate and Deavers had a longstanding relationship, whether the relationship (inaudible) and there was an agreement between family members that she should die.  The mother gave the inmate the weapon.  The inmate and others put the young lady in the car and took her out and had a long conversation about how she was going to die.  Subsequently the inmate shot and killed the victim.

(Decision at 7-9.)

## ANALYSIS

### I. Standards of Review Applicable to Habeas Corpus Claims

A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of some transgression of federal law binding on the state courts.  See Peltier v. Wright, 15 F.3d 860, 861 (9th Cir. 1993); Middleton v. Cupp, 768 F.2d 1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Park v. California, 202 F.3d 1146, 1149 (9th Cir. 2000); Middleton, 768 F.2d at 1085.  Habeas corpus cannot be utilized to try state issues de novo.  Milton v. Wainwright, 407 U.S. 371, 377 (1972).

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Clark v. Murphy, 331 F.3d 1062, 1067 (9th Cir. 2003).  Title 28 U.S.C. §2254(d) sets forth the following standards for granting habeas corpus relief:

/////

3

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

See also Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v. Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001). If the state court's decision does not meet the criteria set forth in § 2254(d), a reviewing court must conduct a de novo review of a habeas petitioner's claims. Delgadillo v. Woodford, 527 F.3d 919, 925 (9th Cir. 2008). See also Frantz v. Hazey, 513 F.3d 1002, 1013 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the habeas petition by considering de novo the constitutional issues raised.").

The court looks to the last reasoned state court decision as the basis for the state court judgment. Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir. 2004). If the last reasoned state court decision adopts or substantially incorporates the reasoning from a previous state court decision, this court may consider both decisions to ascertain the reasoning of the last decision. Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en banc). Where the state court reaches a decision on the merits but provides no reasoning to support its conclusion, a federal habeas court independently reviews the record to determine whether habeas corpus relief is available under § 2254(d). Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002). When it is clear that a state court has not reached the merits of a petitioner's claim, or has denied the claim on procedural grounds, the AEDPA's

/////

deferential standard does not apply and a federal habeas court must review the claim de novo. Nulph v. Cook, 333 F.3d 1052, 1056 (9th Cir. 2003).

II. Petitioner's Claim

Petitioner claims that the Board's failure to find him suitable for parole at his February 22, 2007 parole suitability hearing violated his right to due process. (Form Pet. at 5-5A.) He argues that there was "no evidence" presented at the hearing that he posed an unreasonable risk of danger to society if released from prison. (Id. at 5.) Petitioner also argues that the Board's continued use of immutable factors as evidence of unsuitability violates his right to due process. (Id. at 5A.) He contends that the Board did not establish a nexus between the stated factors of unsuitability and petitioner's current risk of dangerousness. (Id. at 5-5A.) In his traverse, petitioner summarizes his claim as follows:

> May a parole board, consistent with due process, interminably preclude the parole of an otherwise parole-qualified inmate with a protected liberty interest in parole based solely on the facts of a thirty-plus year old first-degree murder (a) after the inmate has served more than a decade in excess of the maximum prison term prescribed by the board's codified regulations for a first-degree murder with those facts, (b) after he has been repeatedly assessed by the board's forensic experts to pose a negligible parole risk to public safety, although the State's statutes and regulations require that parole must be granted when it would not pose "an unreasonable risk of danger to public safety" (c) without stating any nexus between the offense facts recited and the inmate's current parole risk to public safety?

(Traverse at 2.)

A. Due Process in the California Parole Context

The Due Process Clause of the Fourteenth Amendment prohibits state action that deprives a person of life, liberty, or property without due process of law. One alleging a due process violation must first demonstrate that he was deprived of a liberty or property interest protected by the Due Process Clause and then show that the procedures attendant upon the deprivation were not constitutionally sufficient. Ky. Dep't of Corr. v. Thompson, 490 U.S. 454, 459-60 (1989); McQuillion v. Duncan, 306 F.3d 891, 900 (9th Cir. 2002) (McQuillion I).

5

1         A protected liberty interest may arise from either the Due Process Clause of the
2  United States Constitution or state laws. Bd. of Pardons v. Allen, 482 U.S. 369, 373 (1987). The
3  United States Constitution does not, of its own force, create a protected liberty interest in a parole
4  date, even one that has been set. Jago v. Van Curen, 454 U.S. 14, 17-21 (1981). However, "a
5  state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release
6  will be granted' when or unless certain designated findings are made, and thereby gives rise to a
7  constitutional liberty interest." McQuillion I, 306 F.3d at 901 (quoting Greenholtz v. Inmates of
8  Neb. Penal, 442 U.S. 1, 12 (1979)).

9         California's parole scheme gives rise to a cognizable liberty interest in release on
10 parole, even for prisoners who have not already been granted a parole date. Sass v. Cal. Bd. of
11 Prison Terms, 461 F.3d 1123, 1128 (9th Cir. 2006); Biggs v. Terhune, 334 F.3d 910, 914 (9th
12 Cir. 2003); McQuillion I, 306 F.3d at 903; see also In re Lawrence, 44 Cal. 4th 1181, 1204,
13 1210, 1221 (2008). Accordingly, this court must examine whether California provided the
14 constitutionally-required procedural safeguards when depriving petitioner of a protected liberty
15 interest and, if not, whether the state courts' conclusion that it did was contrary to or an
16 unreasonable application of clearly established federal law.

17        In this regard, it is clearly established federal law that a parole board's decision
18 deprives a prisoner of due process with respect to his constitutionally protected liberty interest in
19 a parole release date if the Board's decision is not supported by "some evidence in the record."
20 Superintendent v. Hill, 472 U.S. 445, 457 (1985); Irons v. Carey, 505 F.3d 846, 851 (9th Cir.
21 2007); Sass, 461 F.3d at 1128; Biggs, 334 F.3d at 915. "The 'some evidence' standard is
22 minimally stringent," and a decision will be upheld under that standard if there is any evidence in
23 the record that could support the conclusion reached by the factfinder. Powell v. Gomez, 33 F.3d
24 39, 40 (9th Cir. 1994) (citing Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)). See also
25 Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir. 1986). However, "the evidence
26 underlying the board's decision must have some indicia of reliability." Jancsek v. Or. Bd. of

1  Parole, 833 F.2d 1389, 1390 (9th Cir. 1987).  See also Perveler v. Estelle, 974 F.2d 1132, 1134
2  (9th Cir. 1992).  Determining whether the "some evidence" standard is satisfied does not require
3  examination of the entire record, independent assessment of the credibility of witnesses, or the
4  weighing of evidence.  Toussaint, 801 F.2d at 1105.  The question is whether there is any reliable
5  evidence in the record that could support the conclusion reached.  Id.
6          When assessing whether a state parole board's suitability decision was supported
7  by "some evidence," the analysis "is framed by the statutes and regulations governing parole
8  suitability determinations in the relevant state." Irons, 505 F.3d at 851.   Therefore, this court
9  must:

> look to California law to determine the findings that are necessary to deem a prisoner unsuitable for parole, and then must review the record in order to determine whether the state court decision holding that these findings were supported by "some evidence" in [petitioner's] case constituted an unreasonable application of the "some evidence" principle articulated in Hill.

(Id.)

Under California law, prisoners serving indeterminate prison sentences "may serve up to life in prison, but they become eligible for parole consideration after serving minimum terms of confinement."  In re Dannenberg, 34 Cal. 4th 1061, 1078 (2005).  The Board normally sets a parole release date one year prior to the inmate's minimum eligible parole release date, and does so "in a manner that will provide uniform terms for offenses of similar gravity and magnitude in respect to their threat to the public." In re Lawrence, 44 Cal. 4th at 1202 (citing California Penal Code § 3041(a)).  A release date must be set "unless [the Board] determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration . . . and that a parole date, therefore, cannot be fixed . . . ."  Cal. Penal Code § 3041(b).

/////

In order to carry out the mandate of California Penal Code § 3041, the Board must determine "whether the inmate poses 'an unreasonable risk of danger to society if released from prison,' and thus whether he or she is suitable for parole." In re Lawrence, 44 Cal. 4th at 1202 (citing California Code Regs., tit. 15, § 2281(a)). In doing so, the Board must consider all relevant, reliable information available regarding

> the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release.

Cal. Code Regs., tit. 15, § 2281(b).

The regulations identify circumstances that tend to show suitability or unsuitability for release. Cal. Code Regs., tit. 15, § 2281(c) & (d). The following circumstances have been identified as tending to show that a prisoner is suitable for release: (1) the prisoner has no juvenile record of assaulting others or committing crimes with a potential of personal harm to victims; (2) the prisoner has experienced reasonably stable relationships with others; (3) the prisoner has performed acts that tend to indicate the presence of remorse or has given indications that he understands the nature and magnitude of his offense; (4) the prisoner committed his crime as the result of significant stress in his life; (5) the prisoner's criminal behavior resulted from having been victimized by battered women syndrome; (6) the prisoner lacks a significant history of violent crime; (7) the prisoner's present age reduces the probability of recidivism; (8) the prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release; and (9) institutional activities indicate an enhanced ability to function within the law upon release. Cal. Code Regs., tit. 15, § 2281(d).

The following circumstances have been identified as tending to indicate unsuitability for release: (1) the prisoner committed the offense in an especially heinous,

atrocious, or cruel manner; (2) the prisoner had a previous record of violence; (3) the prisoner has an unstable social history; (4) the prisoner's crime was a sadistic sexual offense; (5) the prisoner had a lengthy history of severe mental problems related to the offense; and (6) the prisoner has engaged in serious misconduct in prison.  Cal. Code Regs., tit. 15, § 2281(c).  Factors to consider in deciding whether the prisoner's offense was committed in an especially heinous, atrocious, or cruel manner include: (A) multiple victims were attacked, injured, or killed in the same or separate incidents; (B) the offense was carried out in a dispassionate and calculated manner, such as an execution-style murder; (C) the victim was abused, defiled or mutilated during or after the offense; (D) the offense was carried out in a manner that demonstrated an exceptionally callous disregard for human suffering; and (E) the motive for the crime is inexplicable or very trivial in relation to the offense.  Id. § 2281(c)(1)(A) - (E).

The overriding concern in determining parole suitability in California is public safety.  Dannenberg, 34 Cal. 4th at 1086.  This "core determination of 'public safety' . . . involves an assessment of an inmates current dangerousness."  Lawrence, 44  Cal. 4th at 1205 (emphasis in original).  See also Cal. Code Regs. tit. 15, § 2281(a) ("Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.")  Accordingly, under California law,

> when a court reviews a decision of the Board or the Governor, the relevant inquiry is whether some evidence supports the decision of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings.

Lawrence, 44  Cal. 4th at 1212 (citing In re Rosenkrantz, 29 Cal. 4th 616, 658 (2002); Dannenberg, 34 Cal. 4th at 1071; and In re Lee, 143 Cal. App. 4th 1400, 1408 (2006)).

In recent years the Ninth Circuit Court of Appeals has concluded that, given the liberty interest that California prisoners have in their release on parole, a continued reliance upon an unchanging factor to support a finding of unsuitability for parole may, over time, constitute a

violation of due process. The court has addressed the issue in three significant cases, each of which will be discussed below.

First, in Biggs, the Ninth Circuit Court of Appeals recognized that a continued reliance on an unchanging factor to deny parole, such as the circumstances of the offense, could at some point result in a due process violation.[2] While the court in Biggs rejected several of the reasons given by the Board for finding the petitioner in that case unsuitable for parole, it upheld three: (1) petitioner's commitment offense involved the murder of a witness; (2) the murder was carried out in a manner exhibiting a callous disregard for the life and suffering of another; and (3) petitioner could benefit from therapy. Biggs, 334 F.3d at 913. However, the court in Biggs cautioned that continued reliance solely upon the gravity of the offense of conviction and petitioner's conduct prior to committing that offense in denying parole could, at some point, violate due process. In this regard, the court observed:

> As in the present instance, the parole board's sole supportable reliance on the gravity of the offense and conduct prior to imprisonment to justify denial of parole can be initially justified as fulfilling the requirements set forth by state law. Over time, however, should Biggs continue to demonstrate exemplary behavior and evidence of rehabilitation, denying him a parole date simply because of the nature of Biggs' offense and prior conduct would raise serious questions involving his liberty interest in parole.

Id. at 916. The court in Biggs also stated that "[a] continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and could result in a due process violation." Biggs. 334 F.3d at 917.

In Sass, the Board found the petitioner unsuitable for parole at his third suitability hearing based on the gravity of his offenses of conviction in combination with his prior offenses. 461 F.3d at 1126. Citing Biggs, the petitioner in Sass contended that reliance on these

---

[2] That holding has been acknowledged as representing the law of the circuit. Irons, 505 F.3d at 853; Sass, 461 F.3d at 1129.

1 unchanging factors violated due process. The court disagreed, concluding that these factors
2 amounted to "some evidence" to support the Board's determination. Id. at 1129. The court
3 provided the following explanation for its holding:

> While upholding an unsuitability determination based on these same factors, we previously acknowledged that "continued reliance in the future on an unchanging factor, the circumstance of the offense and conduct prior to imprisonment, runs contrary to the rehabilitative goals espoused by the prison system and *could* result in a due process violation." Biggs, 334 F.3d at 917 (emphasis added). Under AEDPA it is not our function to speculate about how future parole hearings could proceed. Cf. id. The evidence of Sass' prior offenses and the gravity of his convicted offenses constitute some evidence to support the Board's decision. Consequently, the state court decisions upholding the denials were neither contrary to, nor did they involve an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d).

Id.

In Irons, the Ninth Circuit sought to harmonize the holdings in Biggs and Sass, stating as follows:

> Because the murder Sass committed was less callous and cruel than the one committed by Irons, and because Sass was likewise denied parole in spite of exemplary conduct in prison and evidence of rehabilitation, our decision in Sass precludes us from accepting Irons' due process argument or otherwise affirming the district court's grant of relief.
>
> We note that in all the cases in which we have held that a parole board's decision to deem a prisoner unsuitable for parole solely on the basis of his commitment offense comports with due process, the decision was made before the inmate had served the minimum number of years required by his sentence. Specifically, in Biggs, Sass, and here, the petitioners had not served the minimum number of years to which they had been sentenced at the time of the challenged parole denial by the Board. Biggs, 334 F.3d at 912; Sass, 461 F.3d at 1125. All we held in those cases and all we hold today, therefore, is that, given the particular circumstances of the offenses in these cases, due process was not violated when these prisoners were deemed unsuitable for parole prior to the expiration of their minimum terms.
>
> Furthermore, we note that in Sass and in the case before us there was substantial evidence in the record demonstrating rehabilitation.

> In both cases, the California Board of Prison Terms appeared to give little or no weight to this evidence in reaching its conclusion that Sass and Irons presently constituted a danger to society and thus were unsuitable for parole. We hope that the Board will come to recognize that in some cases, indefinite detention based solely on an inmate's commitment offense, regardless of the extent of his rehabilitation, will at some point violate due process, given the liberty interest in parole that flows from the relevant California statutes. Biggs, 334 F.3d at 917.

Irons, 505 F.3d at 853-54.[3]

B. Analysis

In addressing the factors it considered in reaching its 2007 decision that petitioner was unsuitable for release on parole at that time, the Board in this case stated as follows:

> Back on record. Everyone previously in the room has returned. It's approximately 2:40 p.m. Mr. Stephenson, the Panel denied your parole for one year. The Panel relied on all information received from the public and relied (inaudible) on the following circumstances that concluded that you are not yet suitable for parole, and would pose an unreasonable risk or danger to society or a risk to public safety if released (inaudible). The reasons are and to begin with the commitment offense. The offense was carried out in a dispassionate manner. The victim was abused during the offense, having been threatened of various ways of the victim was going to be murdered on the way to the location where she was in fact was murdered. The offense was carried out in a manner which demonstrates a callous disregard for human suffering. The motive for the crime was simply indespicable [sic] in relation to the offense. The murder of the victim did not deter the inmate from later committing another offense, in that he was arrested and convicted for assault with a deadly weapon while on bail for the commitment offense. In that offense, the victim was severely beaten. Conclusions were drawn from the statement of fact where the inmate was given a firearm by his mother to kill the victim. The inmate (inaudible) with family members, got in the car. The

---

[3] The California Supreme Court has also acknowledged that the aggravated nature of the commitment offense, over time, may fail to provide some evidence that the inmate remains a current threat to public safety. In re Lawrence, 44 Cal. 4th at 1218-20 & n. 20. Additionally, a recent panel of the Ninth Circuit in Hayward v. Marshall, 512 F.3d 536, 546-47 (9th Cir. 2008), determined that under the "unusual circumstances" of that case the unchanging factor of the gravity of the petitioner's commitment offense did not constitute "some evidence" supporting the governor's decision to reverse a parole grant on the basis that the petitioner would pose a continuing danger to society. However, on May 16, 2008, the Court of Appeals decided to rehear that case en banc. Hayward v. Marshall, 527 F.3d 797 (9th Cir. 2008). Therefore, the panel decision in Hayward is no longer citable precedent.

12

|   |   |
|---|---|
| 1 | victim was a 24-year old victim while in route to the location that the victim was murdered.  She was taunted with various ways she was going to be murdered.  They drove to a dead end where the inmate got out of the car and shot her three to six times, and then the group left leaving the victim.  The inmate has an escalating pattern of criminal conduct; been involved with alcohol and drugs, including use and sale of drugs; been convicted of carrying a concealed weapon, several related violations.  Failed to profit from society's previous attempts to correct his criminality.  Those attempts include adult probation, county jail.  The inmate has 11 counseling chronos, five 115s since incarceration.  Psychiatric evaluation dated June 15, 2004 by Dr. Hanley was generally supportive.  However, it does say that, "The inmate presents a low risk of danger if released compared to the general population of inmates at a state prison."  Inmate was found to have appropriate parole plans.  He has a job offer, an offer of residence, he has marketable skills.  The Panel considered the appearance in opposition of parole of the deputy district attorney of Alameda County.  The Panel makes the following findings:  The inmate needs to continue programming in order to face, discuss, (inaudible).  Nevertheless, there's a lot to commend this inmate for.  He's obtained a GED while incarcerated.  Has sustained participation (inaudible) NA and AA, remained disciplinary-free for approximately 14 years.  He's participated in anger management courses, Breaking Barrier, Alternatives to Violence, Christian's 12-steps programs, Bible studies.  He has supportive chronos from staff members, he's participated in (inaudible), and he's held several leadership positions in PIA.  However, these positive aspects of (inaudible) do not outweigh the factors of unsuitability.  The Panel recommends that the inmate remain disciplinary-free and (inaudible) continue to participate in self-help programs and in essence, continue doing what you're doing.  The confusion stems from, I think, on the part of this Panel is, we have absolutely no idea what the motive (inaudible).  The inmate (inaudible) talk to a psychologist something else [sic].  Just so they can give you an idea of whether or not you have any insight (inaudible).  You have many, many versions of what happened.  (Inaudible) uncertain if you're (inaudible) suitable for parole.  So give that some thought. |

(Decision at 49-51.)

The Alameda County Superior Court rejected petitioner's due process challenge to the Board's February 22, 2007 suitability decision, finding that "some evidence" supported the Board's conclusion that petitioner was not yet ready to be paroled. (Answer, Ex. B.)  The Superior Court noted that the Board's decision was based on "the commitment offense, Petitioner's prior criminal record, his institutional behavior, and need for further programming

13

for Petitioner to get some insight into his crime." (Id. at 2.) The court found, after careful review, that these factors were supported by the record and provided "some evidence" that "Petitioner currently poses an unreasonable risk of danger to society if released." (Id. at 5.)

After taking into consideration the Ninth Circuit decisions in Biggs, Sass, and Irons, and for the reasons set forth below, this court concludes that petitioner is not entitled to federal habeas relief with respect to his due process challenge to the Board's February 22, 2007 decision denying him parole. Contrary to petitioner's arguments, the Board did not rely on the commitment offense alone to find him unsuitable for parole. Rather, as discussed by the Alameda County Superior Court, the Board relied on the nature of petitioner's commitment offense, petitioner's criminal record, petitioner's institutional behavior, and the need for petitioner to gain more understanding into the reason he committed the crime. With regard to the latter two factors, the Superior Court explained:

> Petitioner's institutional behavior is far from spotless. There is some evidence that Petitioner has engaged in serious misconduct while in prison. Petitioner had five CDC 115 while in prison. CDC 115 documents misconduct that is believed to be a violation of law or is not minor in nature, and a CDC 128 documents incidents of minor misconduct. (See In re Gray (2007) 151 Cal. App.4th 379, 389 and Cal. Code Regs., tit. 15, § 3312, sucd. (a)(2) & (3).) The Board noted that Petitioner had gotten eleven CDC 128, the last one in 2001.
>
> Finally, the Board found Petitioner needed further programming in order to face the crime, which is another way of saying that Petitioner needs to gain insight into his crime. This finding is supported by the evidence given the numerous versions of the crime, including his involvement in the crime and the motive for the crime, Petitioner has provided over the period of incarceration. As recent as 2001, 2003 and 2005 Petitioner has provided different versions of the crime, as well as different motives. Thus, there is "some evidence" to support this finding.

(Answer, Ex. B at 5.) The four factors cited by the Board constitute "some evidence" supporting its decision that petitioner was not yet suitable for release on parole in 2007 and would pose an unreasonable risk of danger if released at that time. Sass, 469 F.3d at 1129; Irons, 505 F.3d at 665.

14

This court acknowledges that there are several factors supported by the record which tend to show petitioner was in fact suitable for release on parole at the time of his 2007 hearing. Nonetheless, the court concludes that under the circumstances of this case the Board's decision must stand under the minimally stringent "some evidence" standard and that the Board's decision did not result in a due process violation. Accordingly, petitioner is not entitled to federal habeas relief on his claim that the Board's failure to find him suitable for parole at his February 22, 2007 hearing violated his right to due process.[4]

## CONCLUSION

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served and filed within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: March 23, 2010.

/s/ Dale A. Drozd
DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:8:
steph730.hc

---

[4] Any claim that the Board failed to comply with state laws and regulations when it found petitioner unsuitable for parole at his February 22, 2007 hearing is not cognizable in this federal habeas corpus proceeding. See Rivera v. Illinois, ___ U.S. ___, 129 S. Ct. 1446, 1454 (2009) ("[A] mere error of state law . . . is not a denial of due process") (quoting Engle v. Isaac, 456 U.S. 107, 121, n. 21 (1982) and Estelle v. McGuire, 502 U.S. 62, 67, 72-73 (1991)).

15